IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

_____

| | |
|---|---|
| STIMSON LUMBER COMPANY, an Oregon corporation,<br><br>Plaintiff,<br><br>vs.<br><br>INTERNATIONAL PAPER COMPANY, a New York corporation,<br><br>Defendant. | CV 10-79-M-DWM-JCL<br><br><br><br>FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |

_____

This matter comes before the Court on Defendant International Paper Company's ("International Paper") Fed. R. Civ. P. 12(b)(6) Motion to Dismiss for failure to state a claim upon which relief can be granted. For the reasons detailed below, International Paper's motion should be denied.

## I.  BACKGROUND

Plaintiff Stimson Lumber Company ("Stimson") brings this action under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., and the Montana Comprehensive Environmental Cleanup and Responsibility Act ("CERCA"), Mont. Code Ann. § 75-10-701 et seq.  Stimson seeks contribution from International Paper for costs it has incurred, or will incur to clean up pollution and contamination at the site of the

1

Bonner Mill in Bonner, Montana. Stimson contends that International Paper is jointly and severally liable for those past and future costs.

Stimson is the present owner of the Bonner Mill where a lumber sawmill and a plywood manufacturing plant are located, but are no longer in use. The mill has been owned and operated by various entities since the mid 1880s.

International Paper's predecessor in interest, Champion International Corporation ("Champion"),[1] purchased the Bonner Mill in 1972 from the Anaconda Company. Champion owned and operated the Bonner Mill from 1972 through September 2, 1993, at which time Stimson purchased it from Champion.

Stimson alleges that during Champion's ownership and operation of the sawmill and plywood plant at the Bonner Mill, Champion "used equipment, including hydraulic pumps and transformers, that contained" polychlorinated biphenyls ("PCBs").[2] Dkt. # 1 at ¶ 12. Stimson then alleges that "[o]n information and belief, malfunctions and leaks of that equipment caused releases of PCBs into the environment on the Site during Champion's ownership and

---

[1] The Court will refer to International Paper and Champion interchangeably as the same entity.

[2] Stimson explains in its Complaint that PCBs were outlawed for use in the United States in 1979, and a ban on the use of PCBs was phased in over a five-year period from 1979 to 1984. PCBs are now listed as hazardous substances under both CERCLA and CERCA.

operation of the Site." *Id*.

Additionally, immediately prior to Stimson's acquisition of the Bonner Mill from Champion "there was visible leakage and pooling of industrial chemicals on the Site." Dkt. #1 at ¶ 13. Pursuant to the parties' agreement for Stimson's purchase of the Bonner Mill, Champion agreed to clean up the visible chemical spills. *Id*.

A cooling pond exists on the Bonner Mill property. The pond was constructed around 1940, and over the years the pond was used to collect storm water runoff, "boiler blow-down water," and "non-contact cooling water" from the property. Dkt. #1 at ¶ 10. The containment berm of the cooling pond abuts the banks of the Blackfoot River.

In 2006, environmental tests were conducted at the Bonner Mill on behalf of the Montana Department of Environmental Quality. Tests results on samples from the cooling pond disclosed the existence of PCBs in the sediment of the pond and in the pond's containment berm.

In August 2008, the Montana Department of Environmental Quality notified Stimson that it was obligated to clean up the PCB contamination in and around the cooling pond. Stimson later entered an agreement with the Department to complete the clean up which includes removal of the contamination at the cooling

pond, and restoration of the banks of the Blackfoot River.

Stimson alleges International Paper is liable under CERCLA and CERCA for at least a portion of the cost of cleaning up the PCB contamination. It alleges International Paper's predecessor — Champion — was an owner or operator of the Bonner Mill which engaged in acts or omissions which "resulted in the release of hazardous substances on, at, or under the Site, which migrated or threaten to migrate to the environment." Dkt. #1 at ¶ 25. Therefore, International Paper is liable for the response costs Stimson has incurred, or will incur "as a consequence of the release or threatened release of hazardous substances into the environment at the Site." Dkt. #1 at ¶ 28. Alternatively, International Paper is liable under CERCLA for contribution to Stimson's cleanup response costs that it has incurred or will incur.

Stimson alleges International Paper is similarly liable under CERCA. Stimson is being held jointly and severally liable for the cost of cleaning up the contamination at the Bonner Mill, and it alleges that because International Paper "owned and operated the Site at the time PCBs and other hazardous substances were released or disposed of at the Site[, International Paper] is jointly and severally liable for remedial action costs" under CERCA. Dkt. #1 at ¶ 39. Additionally, Stimson alleges International Paper is liable under CERCA for

contribution to Stimson for the response costs Stimson has incurred "as a consequence of the release or threatened release of hazardous or deleterious substances into the environment at the Site."  Dkt. #1 at ¶ 40.

International Paper moves, under Fed. R. Civ. P. 12(b)(6), to dismiss Stimson's complaint for failure to state a claim for relief under either CERCLA or CERCA.  International Paper contends Stimson's allegations are conclusory, merely recite the elements of liability under CERCLA and CERCA, and lack sufficient factual detail or content to meet the legal standards a plaintiff must satisfy to survive dismissal under Rule 12(b)(6).

## II.  LEGAL STANDARDS - RULE 12(B)(6)

A cause of action may be dismissed under Fed. R. Civ. P. 12(b)(6) either when it asserts a legal theory that is not cognizable as a matter of law, or if it fails to allege sufficient facts to support an otherwise cognizable legal claim. *SmileCare Dental Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996).  In addressing a Rule 12(b)(6) challenge the court accepts all factual allegations in the complaint as true (*Hospital Bldg. Co. v. Trustees of the Rex Hospital*, 425 U.S. 738, 740 (1976)), and construes the pleading in the light most favorable to the nonmoving party.  *Tanner v. Heise*, 879 F.2d 572, 576 (9th Cir. 1989).  The court need not accept legal conclusions cast in the form of factual

5

allegations if those conclusions cannot reasonably be drawn from the facts alleged. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

The standard of review under Rule 12(b)(6) is guided by Fed. R. Civ. P. 8(a)(2) which requires that a pleading "must contain: [...] (2) a short and plain statement of the claim showing that the pleader is entitled to relief[.]" *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting Rule 8). Although Rule 8(a)(2) does not require "detailed factual allegations," a plaintiff must set forth more than bare allegations that the defendant unlawfully harmed the plaintiff. *Id*. (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The allegations must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555. The allegations must rise above the level of mere speculation, but need only "raise a reasonable expectation that discovery will reveal evidence of" a basis for liability. *Id*. at 555-56.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 129 S.Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility does not equate with "probability," but it requires "more than a sheer possibility that a defendant has acted unlawfully[,]" and factual allegations "that are 'merely consistent with' a defendant's liability" do not cross the line between possibility and plausibility. *Id*. Allegations which permit only an inference of the "mere possibility of misconduct" do not "show[] that the pleader is entitled to relief[.]" *Id*. at 1950 (quoting Rule 8(a)(2)). Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

In considering a motion to dismiss the court should follow a two-step process. The court can "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft*, 129 S. Ct. at 1950. Then, to the extent there exist "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

### III. DISCUSSION

The elements of liability under CERCLA and CERCA which International Paper argues are not sufficiently established by Stimson's factual allegations are set forth in 42 U.S.C. § 9607 and Mont. Code Ann. 75-10-715. Under CERCLA,

liability for the release of a hazardous substance is imposed on "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of[.]"  42 U.S.C. § 9607(a)(2).  Similarly, CERCA imposes liability on "a person who at the time of disposal of a hazardous or deleterious substance owned or operated a facility where the hazardous or deleterious substance was disposed of[.]"  Mont. Code Ann. § 75-10-715(1)(b).

International Paper argues Stimson's allegations fail to set forth any factual information suggesting International Paper engaged in conduct exposing it to liability under the referenced provisions of CERCLA and CERCA.  It believes Stimson's allegations fail to establish that "PCB-containing materials were used during the time of Champion's ownership of the Site or that if a release occurred, that it was one of a fluid containing PCBs."  Dkt. # 15 at 9.  The Court disagrees.

The factual allegations of Stimson's Complaint assert exactly that which International Paper erroneously argues is missing.  Directly contrary to International Paper's contention, Stimson alleges as follows:

> Champion used equipment, including hydraulic pumps and transformers, that contained PCBs.  On information and belief, malfunctions and leaks of that equipment caused releases of PCBs into the environment on the Site during Champion's ownership and operation of the Site.

Dkt. # 1 at ¶ 12.  These allegations contain sufficient factual content to state a

claim under CERCLA and CERCA that is plausible on its face. They are sufficiently factual in nature to allow the Court to draw the reasonable inference that International Paper is responsible for malfunctions and leaks from hydraulic pumps and transformers that Champion used on the Bonner Mill property, and that the material that leaked from that equipment contained PCBs. These allegations are not mere "labels and conclusions," do not merely recite the elements of liability, and rise above the level of mere speculation. The factual allegations suggest more than a mere possibility that International Paper is liable, and they "raise a reasonable expectation that discovery will reveal evidence" supporting International Paper's liability. Thus, the above-quoted allegations constitute factual matters that the Court must accept as true under Rule 12(b)(6).

International Paper presents the correlative argument that Stimson's allegations asserting leaks in Champion's equipment caused the release of PCBs are insufficient to satisfy the Rule 12(b)(6) standards because they are made only on "information and belief." The argument is unpersuasive.

Allegations based on a plaintiff's information and belief can be sufficient "where the facts are peculiarly within the possession and control of the defendant [...] or where the belief is based on factual information that makes the inference of culpability plausible[.]" *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2nd Cir.

2010) (citing *Iqbal*, 129 S. Ct. at 1949). Allegations based on information and belief, however, must set forth sufficient "factual content that allows [the court] 'to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Sinaltrainal v. Coca-Cola Company*, 578 F.3d 1252, 1268 (11th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949).

The facts alleged by Stimson regarding leaks from Champion's equipment that caused releases of PCBs are the type of facts that would be peculiarly within International Paper's possession and control. Furthermore, Stimson's factual allegations regarding Champion's use of equipment at the Bonner Mill before PCBs were banned in the United States are sufficient to allow the Court to draw the reasonable inference of culpability — that Champion's equipment leaked PCBs at the Bonner Mill. The standards under Rule 12(b)(6) permit the Court to draw on its common sense, and the Court finds it is plausible that Champion's equipment leaked PCBs on the property. Stimson's allegations in this regard are more than sufficient to survive dismissal.

International Paper next challenges the factual content of Stimson's allegations with respect to its liability for the PCBs found in and around the cooling pond at the Bonner Mill. Specifically, it contends Stimson's allegations do not contain any facts describing how any PCB leaks caused by International

Paper reached the cooling pond, or how any of those leaks are connected with the PCBs found in the cooling pond. International Paper contends the allegations fail to establish a causal nexus between any PCBs it may have released on the property and the response costs Stimson will incur in removing PCBs at the cooling pond.

Stimson's allegations are sufficient to draw a reasonable inference of culpability, and make it plausible that International Paper is liable for the PCBs discovered at the cooling pond. Stimson alleges that the cooling pond was used to collect, among other things, storm water runoff from the property. Common sense dictates that it is plausible that the alleged leaks of PCBs caused by Champion, and the visible leakage and pooling of industrial chemicals on the property at the time Champion owned the Bonner Mill could have reached the cooling pond through the storm water runoff. These factual allegations are accepted as true and state a plausible claim for relief against International Paper.

## IV.  CONCLUSION

Based on the forgoing, IT IS HEREBY RECOMMENDED that International Paper's Motion to Dismiss should be denied.

DATED this 18th day of October, 2010.

        /s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge