**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

_____

STIMSON LUMBER COMPANY,
an Oregon corporation,                                         CV 10-79-M-DWM-JCL

                Plaintiff,

      vs.                                                                    ORDER

INTERNATIONAL PAPER
COMPANY, a New York corporation,

                Defendant.

_____

      This matter comes before the Court on Defendant International Paper Company's ("International Paper") Motion to Disqualify Plaintiff Stimson Lumber Company's ("Stimson") counsel, the law firm of Garlington, Lohn, and Robinson. For the reasons detailed below, International Paper's motion is granted.

## I.  BACKGROUND

      Stimson is the present owner of the Bonner Mill in Bonner, Montana, where a lumber sawmill and a plywood manufacturing plant were located. Stimson purchased the Bonner Mill in September, 1993, from Champion International Corporation ("Champion"). Champion is International Paper's predecessor in

1

interest.[1]

Certain pollutants and contaminants are located at the site of the Bonner Mill which Stimson is obligated to clean up.  Stimson has incurred, or will incur expenses associated with those environmental clean up activities.

Stimson alleges Champion is responsible for some of the contamination at the Bonner Mill based on Champion's former ownership and operation of the facility.  Therefore, Stimson brings this action against International paper under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., and the Montana Comprehensive Environmental Cleanup and Responsibility Act ("CERCA"), Mont. Code Ann. § 75-10-701 et seq., to recover clean up expenses from International Paper.

Stimson's local counsel in this action are Stephen R. Brown and Elena J. Zlatnik, of the law firm of Garlington, Lohn and Robinson ("Garlington").[2]  In its Motion to Disqualify, International Paper asserts Brown has a conflict of interest which precludes both him and the entire Garlington firm from representing

---

[1]The Court will refer to International Paper and Champion interchangeably as the same entity for purposes of addressing International Paper's Motion to Disqualify.

[2]Stimson is also represented in this litigation by Paul Conable and Steven Olson, attorneys associated with the law firm of Tonkon Torp, LLP in Portland, Oregon.

Stimson in this action.

The record reflects that Brown previously performed legal work for Champion with respect to matters that are now at issue in this lawsuit. In 1993, Brown was an associate at the law firm of Stoel Rives in Portland, Oregon. Stoel Rives represented Champion at that time, and Brown states that he worked on the sale of the Bonner Mill from Champion to Stimson in 1993. The terms of that sale, memorialized in the Mill Asset Purchase and Sale Agreement dated September 2, 1993, are directly at issue in this lawsuit. *See* Dkt. 41-2.

Brown states that while he worked at Stoel Rives he had limited contact with Champion. He confirms, however, he was involved with easement and property agreements that were apparently associated with the sale of the Bonner Mill to Stimson. Also, in his October 20, 2010 letter to counsel for International Paper, Brown states he was aware of certain environmental issues disclosed to Stimson during the course of the sale negotiations.

Brown began working at Garlington in 1994. While at Garlington, Brown has performed legal work for Champion on environmental projects which he asserts were unrelated to the 1993 sale of the Bonner Mill. Specifically, Brown performed legal work for Champion with respect to asbestos and groundwater contamination at the Bonner Mill. On occasion, Garlington also provided general

business advice to Champion.

On November 29, 2010, International Paper moved to disqualify Brown, Zlatnik, and Garlington from representing Stimson. In response, Brown moved to withdraw as counsel for Stimson. The issue which remains for resolution is whether Zlatnik and the entire Garlington firm are disqualified from representing Stimson.

For purposes of its response to International Paper's Motion to Disqualify, Stimson assumes Brown's prior legal work for Champion created a conflict of interest precluding him from representing Stimson in this matter. Dkt. 42 at 2 n.1.

## II.  DISCUSSION

The regulation of the conduct of attorneys in federal court is within the province of the court. *Paul E. Iacono Structural Engineer, Inc. v. Humphrey*, 722 F.2d 435, 438-39 (9th Cir. 1983). The court exercises inherent powers in controlling attorneys' conduct. *In re Snyder*, 472 U.S. 634, 645 n.6 (1985).

Consistent with its inherent powers, the District of Montana has promulgated Local Rules of Procedure which establish that the standards of professional conduct applicable to attorneys practicing in this Court include the American Bar Association's Model Rules of Professional Conduct ("ABA Rules"), and the Montana Rules of Professional Conduct ("Montana Rules"). L.R.

83.13.  This Court may properly rely on the referenced rules as sources of ethical principles governing Montana attorneys, and those rules may serve as a basis for disqualification.  *See Iacono Structural Engineer, Inc.*, 722 F.2d at 440.  The court's decision regarding the disqualification of an attorney based on a conflict of interest is within the court's discretion.  *Id.* at 438.

The Montana Rules and the ABA Rules establish than an individual attorney's conflict of interest and resulting disqualification from representing a new client are imputed to all other members of a law firm where the attorney works.  The specific imputed disqualification rules are set forth in Rule 1.10 of both the Montana Rules and the ABA Rules.  Montana Rule 1.10 states, in relevant part, as follows:

> (a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9 unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.
>
> [...]
>
> (c) When a lawyer becomes associated with a firm, no lawyer associated in the firm shall knowingly represent a person in a matter in which that lawyer is disqualified under Rule 1.9 unless:
>
>> (1) the personally disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and

> (2) written notice is promptly given to any affected former client to enable it to ascertain compliance with the provisions of this Rule.

Montana Rule 1.10.

Similarly, ABA Rule 1.10(a) establishes an imputed disqualification rule, but imposes additional conditions on a law firm's ability to screen the individual disqualified attorney. The Rule provides as follows:

> (a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless
>
>> (1) the prohibition is based on a personal interest of the disqualified lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm; or
>>
>> (2) the prohibition is based upon Rule 1.9(a) or (b) and arises out of the disqualified lawyer's association with a prior firm, and
>>
>>> (i) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom;
>>>
>>> (ii) written notice is promptly given to any affected former client to enable the former client to ascertain compliance with the provisions of this Rule, which shall include a description of the screening procedures employed; a statement of the firm's and of the screened lawyer's compliance with these Rules; a statement that review may be available before a tribunal; and an agreement by the firm to respond promptly to any written inquiries or objections by the former client about the screening procedures; and
>>>
>>> (iii) certifications of compliance with these Rules and with the

> screening procedures are provided to the former client by the screened lawyer and by a partner of the firm, at reasonable intervals upon the former client's written request and upon termination of the screening procedures.

ABA Rule 1.10(a).

The purpose of these disqualification rules is to protect and enhance the professional relationship between an attorney and a client. *Trone v. Smith*, 621 F.2d 994, 998 (9th Cir. 1980). The most important aspect of that relationship served by these rules "is the preservation of secrets and confidences communicated to the lawyer by the client." *Id*.

Generally, an attorney is "conclusively presumed to have received client confidences" during the course of the attorney's representation of the client. *See In re County of Los Angeles*, 223 F.3d 990, 993 (9th Cir. 2000). Thus, in considering whether an attorney is disqualified from representing a new client with respect to a matter that is adverse to the attorney's former client, it is irrelevant whether the former client's confidences were actually imparted to the attorney. *Trone*, 621 F.2d at 999. Further, when that attorney associates with a new law firm, it is presumed that the attorney shared the former client's confidences with members of the new law firm. *In re County of Los Angeles*, 223 F.3d at 994-95.

Under Montana law,[3] application of Montana Rule 1.10(a) requires that an individual attorney's conflict of interest and disqualification is automatically imputed to the law firm with which the attorney is associated. *In the Matter of Marra*, 87 P.3d 384, 388 (Mont. 2004). It is conclusively presumed that the conflicted attorney shared a client's confidences with other members of the firm. *Id*. Therefore, the firm's disqualification is necessary to protect against the possibility that any confidential information might be subsequently used against the former client, and is necessary "to avoid even the appearance of a breach of confidence." *Trone v. Smith*, 621 F.2d 994, 1001-1002 (9th Cir. 1980).

Based on the foregoing, Zlatnik and Garlington are vicariously disqualified from representing Stimson. In view of the need to preserve Champion's confidences, Brown's conflict of interest which Stimson assumes exists, and his disqualification from representing Stimson are imputed to Zlatnik and Garlington under Montana Rule 1.10(c) and ABA Rule1.10(a).[4]

Notwithstanding the imputed disqualification, Stimson and Garlington assert they have since screened Brown from any participation in this litigation and,

---

[3] The federal courts apply state law in determining matters regarding the disqualification of an attorney based on a conflict of interest. *In re County of Los Angeles*, 223 F.3d 990, 993 (9th Cir. 2000).

[4] Brown's conflict of interest disqualifies him from representing Stimson pursuant to Montana Rule 1.9(a) and ABA Rule 1.9(a).

8

therefore, Garlington should be permitted to continue to represent Stimson. Consequently, the Court must consider whether an ethical screen is permissible under the circumstances of this case.

Both Montana Rule 1.10(c) and ABA Rule 1.10(a)(2) permit a law firm to create an ethical screen, in limited circumstances, to prevent an individual disqualified attorney from having any participation in a legal matter that is adverse to that attorney's former client. As stated in the rules, the screen may only be employed when the disqualified attorney's conflict of interest arose from the legal representation of a former client prior to becoming associated with the law firm.

In this case, the Court need not decide whether the requisite circumstances exist to permit the use of an ethical screen. Even assuming an ethical screen could have been implemented, the Court finds Stimson and Garlington did not timely or effectively screen Brown from participating in the instant litigation as required under Montana Rule 1.10(c) and ABA Rule 1.10(a)(2).

As a general rule, an ethical screen is inadequate to avoid the vicarious disqualification of a law firm. *See Lucent Technologies, Inc. v. Gateway, Inc.*, 2007 WL 1461406, *2 (S.D. Cal. 2007). The law firm's automatic disqualification, however, may be rebutted by the use of an ethical screen, but only in limited circumstances, and only where (1) the "ethical wall [...is] implemented

in a timely and effective way," and (2) the screening mechanisms are "scrupulously enforced." *In re County of Los Angeles*, 223 F.3d 990, 996-997 (9th Cir. 2000).

Here, there exist several facts which render Garlington's implementation of an ethical screen untimely and ineffective. First, contrary to the express terms of Montana Rule 1.10(c)(1) and ABA Rule 1.10(a)(2)(i), Stimson and Garlington did not timely screen Brown from participation in this litigation. The untimeliness of the screen is established based on the following:

Prior to July 26, 2010, when Stimson commenced this action, Steve Olson (Brown's co-counsel in this litigation) asked Brown to serve as local counsel to represent Stimson with respect to the legal claims that are the subject of this lawsuit. In response to Olson's inquiry, Brown engaged in a conflicts check which reflected the fact that Brown previously performed legal work for Champion with respect to the sale of the Bonner Mill. Despite acknowledging his prior work for Champion, Brown participated directly in this matter as counsel of record for Stimson.

On September 21, 2010, counsel for International Paper, Thomas Grever, wrote to Brown asserting Brown had a conflict of interest based on Brown's prior legal work performed for Champion. Grever informed Brown that International

Paper did not consent to Brown's continued representation of Stimson in this action.

On October 20, 2010, Brown sent a letter to Grever responding to the asserted conflict. Brown concluded that any legal work he or Garlington previously performed for Champion was unrelated to the subject of this lawsuit. Nonetheless, Brown requested that International Paper waive any potential conflict.

Grever informed Brown that International Paper would not waive the conflict of interest. International Paper then filed its Motion to Disqualify on November 29, 2010.

After learning that International Paper would not waive the conflict, Brown and Olson decided that Brown should withdraw from his representation of Stimson in this action. Brown filed his Motion to Withdraw on November 29, 2010.

Brown states that, "After the decision was made for me to withdraw from this action, my firm constructed an ethical wall insulating me from this action. I notified Mr. Grever about this protection." Dkt. 47-1 at 5. Thus, Stimson and Garlington did not implement any screening mechanisms until on or about November 29, 2010.

Because Brown has represented Stimson and has actively participated in this litigation since some time prior to July 26, 2010, the ethical screen erected at the end of November, 2010, was not timely. Where screening mechanisms are not immediately implemented, and are instead instituted only after the conflicted attorney's former client asserts the existence of a conflict, the ethical screen is not timely implemented. *Lucent Technologies, Inc. v. Gateway, Inc.*, 2007 WL 1461406, *4 (S.D. Cal. 2007). *See also I-Enterprise Company, LLC v. Draper Fisher Jurvetson Management Company V, LLC*, 2005 WL 757389, *7 (N.D. Cal. 2005) (concluding that the ethical screen was untimely since it was not erected until after the former client filed its motion to disqualify).

Second, despite the ethical screen Stimson and Garlington have erected, Brown continues to work within the Garlington office building. Brown's close proximity to Zlatnik and all other Garlington attorneys who may work on this litigation, supports a conclusion that the ethical screen Garlington has created is ineffective. *Hitachi, Ltd. v. Tatung Company*, 419 F. Supp. 2d 1158, 1164 (N.D. Cal. 2006). Brown's close proximity to "the attorneys handling [this litigation] undoubtedly increases the unease" and concern International Paper may have that its confidential information could be improperly disclosed to Stimson, and "increases the actual risk of intentional or unintentional disclosure of [...]

confidential information." *Id*., 419 F. Supp. 2d at 1165.

### III.  CONCLUSION

Based on the forgoing, the Court concludes Stimson and Garlington have not timely screened Brown from participation in this litigation, and have not established that its screening mechanisms are effective.  Thus, Zlatnik and Garlington's vicarious disqualification cannot be avoided by the use of the screen they erected.  Therefore, IT IS HEREBY ORDERED that International Paper's Motion to Disqualify is GRANTED.

DATED this 14th day of January, 2011.

                                           /s/ Jeremiah C. Lynch
                                           Jeremiah C. Lynch
                                           United States Magistrate Judge